JOHN HUNNEWELL *versus* AARON HOBART *& al.*

The gist of trespass *quare clausum* is the breaking and entering of the plaintiff's close.

Where an entry is made under authority or license given to the party by law, and he abuses it, he becomes a trespasser *ab initio.*

Where an entry is made by the authority or license of the party in possession, and the person so entering abuses the privilege, he is liable for such abuse, but is not a trespasser *ab initio.*

A. having his legal settlement in B., fell into distress in C. and was relieved by the latter town, of which the town of B. was duly notified. One of the overseers of the poor of B. and its agent, as town officers, but without authority in writing from the board of overseers of B., entered the house in which A. lived and removed his family and effects therefrom to B. A. thereupon brought his action of trespass *quare clausum* against said overseer and agent : — *Held*, that the removal having been made without authority from the overseers in writing, was illegal, and that the defendants were liable as trespassers ; but that the jury having found that the defendants entered the plaintiff's house by his permission, they were not trespassers *quare clausum*, and therefore, not liable in the present action.

Requested instructions, purely hypothetical, are rightfully denied.

ON EXCEPTIONS from *Nisi Prius,* HATHAWAY, J., presiding.

This was an action of trespass *quare clausum.* Plea, the general issue. It was proved that the plaintiff and his family had their legal settlement in the town of Madison; that being in Bangor, they fell into distress, and were supplied as paupers by the overseers of the poor of that city, who legally notified the overseers of the poor of Madison, and requested the removal of the paupers and payment for the supplies furnished them. The town of Madison paid for the supplies, and the defendants went to Bangor and removed the plaintiff and his family, with his goods and effects, to Madison. The defendants acted as town officers of Madison; Hobart being one of the overseers of the poor, and Remick town agent, but not an overseer of the poor.

The presiding Judge instructed the jury, that defendants, having no authority in writing from the overseers of the poor of Madison, as required by statute, were not justified as town officers in removing the plaintiff, his family and effects, and that they were liable as trespassers for so doing. But that the gist of this action was breaking and entering the plaintiff's close. That if defendants entered plaintiff's house without his permission, they would be liable, and their verdict should be for plaintiff. But if the plaintiff gave defendants' permission to enter his house, and they entered by his consent, then defendants would not be liable in this action. Whereupon the counsel for plaintiff requested the Judge to instruct the jury as follows, to wit:—

1. That if the defendants entered the plaintiff's house without authority of law and by permission of plaintiff, he permitting them to enter as an act of hospitality; and if they, being thus in, removed his children, or goods, or did any illegal act against the will of the plaintiff, or against his consent, it would render them trespassers.

2. That if they, by color of law, or claiming to have authority as overseers of Madison, when they had not such authority, entered under such pretence, by consent of the plaintiff, he being led by them to suppose they were so authorized, and

removed his family or goods, or did any other illegal act against plaintiff's consent, they would be liable.

But the Judge declined giving any further instructions than he had before given to the jury.

It appeared in evidence, that defendants came to Bangor the tenth of November, and removed the plaintiff and family on the morning of the next day, and that defendants called at plaintiff's house in the afternoon or evening of the tenth of November.

The plaintiff testified as follows:—"I think I was in the house in the evening before they took the things in the morning. I think that night they came in before I knew any thing about it. The next morning when they took the things, I suspected them, and told them to keep away and not to come in."

The defendant Remick, testified as follows:—"We called at plaintiff's in the afternoon, the sun an hour or two high. We rapped, and he met us at the door, and bid us come in. We stated that we came to remove him and his effects to Madison. (Hobart acted as overseer of the poor.) We called again next morning. He never forbid us going into the house. In the morning we went in as we did before. Plaintiff assented to our going in."

There was no other evidence than the testimony of the plaintiff and Remick above stated, concerning the circumstances and manner of defendants' entrance into plaintiff's house, or of what others said or did at the time. There was evidence tending to show that plaintiff forbid defendants removing his family and effects after they entered his house.

The verdict was for defendants; and the jury found specially that defendants entered the dwellinghouse of plaintiff by his consent. To the above rulings of the Court the plaintiff excepted.

*A. Knowles*, for plaintiff.

1. In whatever way the defendants may have entered plaintiff's house, whether by consent of plaintiff or otherwise, their subsequent acts in removing plaintiff's goods and family,

rendered them trespassers *ab initio. Mussey* v. *Cummings,* 34 Maine, 74, and cases there cited.

2. The defendants entered the house of the plaintiff without any special legal authority, and at most upon his consent that they might enter. They obtained such entrance for the express purpose of taking the goods and children of the plaintiff, and carrying them off. They were forbidden to do this. The purpose for which they entered is apparent. It was an illegal purpose. The *quo animo* is shown, and the law gives them no protection for any part of their doings.

*Abbott,* for defendants.

1. The case is improvidently here, the exceptions not having been presented until more than six days after the verdict was rendered. 37 Maine, 573, 18th Rule.

2. The first requested instruction was properly refused. *The six Carpenters' case,* 1 Smith's Leading Cases, 188.

3. There was no evidence on which to found the second requested instruction.

RICE, J. — Trespass *quare clausum.*

The Judge presiding instructed the jury, that the defendants having no authority in writing from the overseers of the poor of Madison, as required by the statute, were not justified, as town officers, in removing the plaintiff, his family and effects, and that they were liable as trespassers for so doing; but that the gist of this action was the breaking and entering the plaintiff's close. That if the defendants entered the plaintiff's house without his permission they would be liable, and their verdict should be for the plaintiff. But if the plaintiff gave the defendants permission to enter his house, and they entered by his consent, then the defendants would not be liable in this action.

In the *six Carpenters' case,* 8 Coke, 146, it was resolved, that when entry is made by authority or license given to any one by law, and he doth abuse it, he shall be a trespasser *ab initio*; but when or where the entry is by authority or license given by the party, and he abuses it, then he must be

punished for his abuse, but shall not be a trespasser *ab initio.*

This distinction will be found running through all the old authorities to the present day. The instructions were in strict conformity with law.

The requested instructions were rightfully denied. They were both purely hypothetical. The question at issue was not whether the defendants *became* trespassers by acts committed after they had entered by permission, but whether by such illegal acts they became trespassers *quare clausum.*

*Exceptions overruled.——Judgment on the verdict.*

TENNEY, C. J., and HATHAWAY, APPLETON, GOODENOW and CUTTING, J. J., concurred.